IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA HOOKS, | ) | CASE NO. 1:16 CV 00919 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Brenda J. Hooks under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Facts

### A. Background facts and decision of the Administrative Law Judge ("ALJ")

Hooks who was sixty years old at the time of the administrative hearing,[11] has a tenth grade education.[12] Her past relevant work history includes employment as a punch press operator, an electro-plating racker, tow motor operator, and a production assembler.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Hooks had the following severe impairments: loss of visual acuity, depressive disorder and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).[14]

---

[6] ECF # 12.

[7] ECF # 22 (Commissioner's brief); ECF # 19 (Hooks's brief).

[8] ECF # 22-1 (Commissioner's charts); ECF # 19-1 (Hooks's charts).

[9] ECF # 18 (Hooks's fact sheet).

[10] ECF # 27.

[11] ECF # 10, Transcript ("Tr.") at 45.

[12] *Id.*

[13] *Id.* at 32.

[14] *Id.* at 19.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Hooks's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that Ms. Hooks has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can lift 50 pounds occasionally and 25 pounds frequently. She can stand or walk six hours out of an eight hour workday. Ms. Hooks can sit six hours out of an eight hour workday. She can frequently push, pull and use foot pedals. Ms. Hooks can frequently use ramps and stairs but never ladders, ropes, or scaffolds. She can constantly balance and manipulate, frequently stoop and crouch, and occasionally kneel and crawl. Ms. Hooks can occasionally use near and far acuity and field of vision and constantly use depth perception, accommodation, and color vision. She cannot perform fine visual jobs. Ms. Hooks can use constant communication skills. She must avoid high concentration of smoke, fumes, dust, and pollutants. Ms. Hooks must avoid dangerous machinery and unprotected heights. Ms. Hooks can perform tasks up to a specific vocational preparation level of three that are simple and routine. She can perform work that is low stress, meaning no high production quotas, no piece rate work and no work involving arbitration, confrontation, negotiation, or supervision.[15]

Given that residual functional capacity, the ALJ found Hooks incapable of performing her past relevant work as a punch press operator, electro-plating racker, tow motor operator, and production assembler.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Hooks could perform.[17] The ALJ, therefore, found Hooks not under a disability.

---

[15] *Id.* at 24.

[16] *Id*. at 32.

[17] *Id*.

**B.     Issues on judicial review**

Hooks asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hooks presents the following issues for judicial review:

- Whether the ALJ's decision lacks the support of substantial evidence, in that the judge gave "great weight" to psychological consulting and reviewing doctors, but then failed to fully incorporate their opinions into his formulation of plaintiff's residual functional capacity.

- Whether the ALJ's finding that plaintiff did not have a severe left arm impairment, and thereby not limiting plaintiff's use of her left arm in formulating plaintiff's residual functional capacity, is supported by substantial evidence.[18]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

# Analysis

**A.     Standard of review-substantial evidence**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence.

---

[18] ECF # 19 at 1.

> Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standard**

This matter presents two issues: (1) does the RFC include all the functional limitations identified by opinions given great weight by the ALJ; and (2) does substantial evidence support the decision at Step Two to not find Hooks's left arm impairment to be severe.

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

*1.   Step Two*

The difficulty with Hooks's left arm actually involves two distinct complaints, the first being carpal tunnel syndrome and the second being weakness in the arm following surgery in 2001.[22] Hooks argues that the ALJ mentioned her carpal tunnel syndrome but erroneously determined that it was not a severe impairment.[23] She further asserts that it was error for the ALJ to never evaluate whether her arm was weakened as a result of surgery.[24]

As to the carpal tunnel syndrome, the ALJ did note that Hooks does have carpal tunnel syndrome, but declined to find that it was a severe impairment because Hooks had not sought treatment for this condition since she stopped working, thus discounting any claim to the severity of the condition.[25] Hooks replies that while it is true that she did not receive treatment for her carpal tunnel syndrome after she stopped working, the reason for the lack of treatment was the lack of insurance.[26] She maintains that she should not be penalized for lacking access to health care.[27]

---

[22] ECF # 19 at 13.

[23] *Id.*

[24] *Id.*

[25] Tr. at 21.

[26] ECF # 19 at 14.

[27] *Id.* at 14-15.

The Commissioner initially argues that the record here does not show any diagnosis of or treatment for carpal tunnel syndrome.[28] While arguably true in the sense that there is not a separate exhibit for the carpal tunnel diagnosis, it is noted that the records of Hooks's treatment at MetroHealth show that her 2009 diagnosis of carpal tunnel syndrome is referenced on several occasions.[29] As such, the ALJ properly considered carpal tunnel syndrome as an impairment. More importantly, the Commissioner notes that the record provides numerous instances where Hooks sought and received medical treatment during the period where she was without health insurance.[30] The Commissioner notes that Hooks sought treatment at MetroHealth for depression during the period 2012 to 2014, and did so by her own account because she was then uninsured and so could no longer visit her previous providers.[31] Accordingly, I find no error in the ALJ finding that Hooks's carpal tunnel syndrome was less than severe because she had not sought treatment for this condition for several years.

In addition, the Commissioner observes that although Hooks reported episodes of numbness and tingling in her left hand, as well as her carpal tunnel diagnosis, to her physicians during her five year period of treatment at MetroHealth, when she was examined there by her doctors her upper extremity physical examination results were normal, and,

---

[28] ECF # 22 at 15.

[29] Tr. at 420, 424.

[30] ECF # 22 at 16 (citing record).

[31] Tr. at 558.

significantly, she was found to have normal strength.[32] The Commissioner adds that "[a]t no time did any medical source objectively document any hand or arm limitation upon physical examination."[33]

Therefore, for the reasons stated, I find no error in the ALJ's opinion at Step Two. Specifically, I find that substantial evidence supports that opinion as to not identifying either carpal tunnel syndrome or left arm weakness as significant impairments.

### 2. *The RFC*

As the formulation of this issue by Hooks implies, the question is not a challenge to the weight given to the functional opinions of Dr. Kathleen Payne, Ph.D., and Dr. Bruce Goldsmith, Ph.D., both of whom gave opinions that were afforded "great weight."[34] Rather, Hooks contends that the RFC here was "internally inconsistent" with these opinions in specifying that she could perform "simple and routine" tasks "up to" a specific vocation preparation (SVP) level of three,[35] and because the RFC's limitation to low stress work did not encompass a limitation to maintaining attention and concentration nor does it relate to SVP level three jobs.[36]

---

[32] ECF # 22 at 16 (citing record).

[33] *Id*.

[34] Tr. at 30-31.

[35] ECF # 19 at 11.

[36] *Id*. at 12. As Hooks observes, these alleged inconsistencies with the opinions of Dr. Payne and Dr. Goldsmith are also applicable to the opinion of Dr. Roseann Umana, whose functional opinion was also given great weight by the ALJ. *Id*. at 11 fn. 4.

Both of these objections involve the argument that because SVP level three jobs are approaching semi-skilled, such jobs cannot be consistent with "simple and routine," which is the limitation applicable to Hooks. As the Commissioner argues, in a classic phrase, this argument is a "red herring."[37] Indeed, I observe initially that the jobs identified by the VE in this case are specifically not above SVP 2.[38]

More importantly, without any reference to SVPs, the mental limitations of the RFC have the support of substantial evidence. In this regard, the ALJ extensively discussed the weight assigned to the opinions of Drs. Payne, Goldsmith and Umana,[39] and then largely incorporated their findings into the RFC.[40] The weight given was not challenged here. Hooks only contends that there was no specific reference to moderate limitations to concentration in the RFC, which limitation was opined by Dr. Goldsmith and Dr. Payne.[41]

That said, however, as the Commissioner points out, the RFC fairly reflects what Dr. Goldsmith intended by his opinion that Hooks is limited to "routine repetitive tasks. Stress tolerance is limited. [Hooks] can adapt to work settings where changes are routine and predictable."[42]

---

[37] ECF # 22 at 12.

[38] Tr. at 67-68.

[39] *Id*. at 30-31.

[40] *Id*. at 25.

[41] ECF # 19 at 11.

[42] Compare tr. at 24 (RFC) and 148 (Goldsmith).

Accordingly, I find that the RFC in this case fairly reflects the limitations set forth by opinions that were afforded great weight.

## Conclusion

Thus, for the reasons stated, I find that substantial evidence supports the decision of the Commissioner to deny disability and disability insurance benefits to Brenda J. Hooks, and that decision is hereby affirmed.

IT IS SO ORDERED.

Dated: September 21, 2017                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge